# CHARLESTON.

BOWYER v. CONTINENTAL CASUALTY COMPANY.

Submitted June 7, 1912.    Decided April 22, 1913.

1. INSURANCE—*Contract—Application.*
    To make the application for a policy of insurance in an accident and health insurance company, organized under the laws of a state other than this and doing business here, containing warranties, part of the contract of insurance, it must be attached to the policy. Mere reference to it in the policy and adoption thereof in terms do not suffice.  (p. 334).

2. SAME—*Contract—Agreements Outside Policy.*
    In the absence of statutory prescription of the forms of contracts of insurance, such reference and adoption would make the application part of the policy; but section 62 of chapter 74 of the Code as revised, amended and re-enacted by chapter 77 of the Acts of 1907, (serial section 1107a Ann. Code Supp. 1909), and sections 15 and 69 of said chapter, requiring policies of insurance fully and plainly to set forth the contracts between the parties thereto, exclude therefrom all conditions, agreements and warranties not expressed in the policies themselves or papers attached thereto.  (p. 334).

3. SAME—*Action on Policy—Admissibility of Evidence—Application.*
    Though inadmissible, by reason of such statutory provisions, to prove a statement therein as a part of the contract, the ap-

plication for the policy, containing a false statement, is admissible as part of the evidence of fraud in the procurement of the policy.   (p. 337).

4.   SAME—*Action on Policy—Pleading and Proof.*
   Fraud in the procurement of the issuance of a policy of insurance not under seal need not be specially pleaded. Evidence thereof is admissible under the general issue.   (p. 337).

5.   APPEAL AND ERROR—*Harmless Error—Exclusion of Evidence.*
   It is not erroneous to reject relevant and material, but incomplete and insufficient, evidence of a defense, in the absence of disclosure of purpose and intent to supplement it with additional evidence tending to establish the elements of the defense the proffered evidence does not tend to prove.   (p. 338).

Error to Circuit Court, Mercer County.

Action by Ella Bowyer against the Continental Casualty Company.   Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Sanders & Crockett, Manlon Maverick, M. P. Cornelius,* and *L. J. Holland,* for plaintiff in error.

*French & Easley,* for defendant in error..

POFFENBARGER, PRESIDENT:

On this writ of error to a judgment against it for the sum of $2,135.00, the Continental Casualty Company complains principally of the refusal of the court to permit it to rely in evidence upon a false statement made in the application for the policy of insurance as a breach of a warranty of the policy, and also of the refusal of the court to permit the introduction of the application as proof of the false statement therein as evidence of a fraudulent representation inducing the issuance of the policy; the trial court having refused to permit this evidence to go in upon the first theory of defense, here stated, because the statement was found neither on the face of the policy nor in any paper attached thereto, and also to permit it to go in upon the second theory, because fraud in the procurement of the policy had not been specially pleaded and the facts offered in evidence were wholly insufficient to establish the fraud, if it had been pleaded.

The objection to the offered evidence, as proof of a warranty

in the policy and breach thereof, rests upon the statute prescribing and regulating the business of life and accident·insurance companies, and particularly section 62 of chapter 74 of the Code, as revised, amended and re-enacted by chapter 77 of the Acts of 1907, (sec. 1107a Ann. Code Supp. 1909), read and interpreted in the light of other provisions of the statute, regulating the business of insurance companies. This section relates to the business of foreign insurance companies other than fire or life, necessarily including in its terms accident insurance companies. It provides that "such companies or associations shall place on the face of its policy or certificate the agreements with the assured." Section 15 of the acts of 1907, relating to the business of life insurance companies, contains this provision: "Nor shall any such .company or agent thereof make any·contract of insurance or agreement as to such contract other than as plainly expressed in the issued policy thereon." Section 62 provides that foreign insurance companies other than fire or life "shall be governed by the laws of this state regulating the admission of foreign fire insurance companies doing business in this state", except in certain enumerated particulars. Section 69, relating to fire insuarnce companies, says: "In all policies of insurance issued against loss by fire, made by companies chartered by or doing business in this state, no condition shall be valid unless stated in the body of the policy or attached thereto." The policy sued on was an accident policy, giving indemnity for loss of life by accident, and the insurer was a corporation organized under the laws of the state of Indiana.

The application for the policy containing the alleged false statement and warranty of its truth was not attached to the policy, but the latter paper declared the warranties and agreements contained in it and payment of the premium to be the consideration for the insurance and the application for the policy to be a part thereof. The words of this provision are: "The application herefor and any paymaster's order given to provide for the payment of premiums are hereby made a part hereof." These provisions make the application a part of the policy by reference and adoption only. The policy does not on its face, or by any paper attached thereto, show the warranties and agreements. On the consummation of the insurance agreement, the policy went into the hands of the insured and the application therefor was

retained by the insurer and filed with its papers to which the insured had no access. The purpose of statutes of this kind, as declared by the courts in other states, is to require the contract to be so formed as to enable the insured or assured at all times to have before him the covenants and agreements which he is required to observe or perform and relieve him from the burden of relying upon his recollection of the terms of his contract. *Life Ass'n* v. *Musser,* 120 Pa. St. 384; *Life Ins. Co.* v. *Kelly,* 114 Fed. Rep. 268; *Zimmerman* v. *Accident Ins. Co.,* 66 Atl. 1003. Objections to such statutes on the ground of alleged invalidity have been overruled by the courts and their constitutionality affirmed. *Life Ass'n* v. *Musser,* 120 Pa. St. 384; *Considine* v. *Life Ins. Co.,* 165 Mass. 462. Being remedial in nature, they are liberally construed by the courts for the effectuation of their obvious purpose. Though the statute of which the Massachusetts law is a part designated only certain kinds of life insurance by name, not all of them, it has been construed as requiring the attachment of the application to policies of all kinds of life insurance. *Considine* v. *Life Ins. Co.,* cited; *Nugent* v. *Life Ass'n,* 172 Mass. 278. The Kentucky statute relates in terms only to assessment companies, but, read in connection with another statute, applying to old line companies and requiring them to state the contract plainly in the policy, it has been interpreted as requiring attachment of the application to the policies of old line companies. *Life Ins. Co.,* v. *Myers,* 109 Ky. 372; *Life Ins. Society* v. *Puryear,* 109 Ky. 381. The Iowa statute is held to apply to mutual companies, though not found in the chapter relating to them. *Corson* v. *Insurance Ass'n,* 115 Ia. 485. Read in the light of the spirit of these decisions, our statute undoubtedly requires the application to be attached to the policy, to enable the insured to resort to it at any time for information as to the terms of his contract. Under common law principles, the words of reference and adoption found in the policy would make the application a part of it, but these statutory provisions, prescribing the form of contracts of insurance, clearly within the limits of legislative power, declare as a matter of public policy, that all the essential elements relating to the contract must appear in one paper, the policy, or that paper and the others attached thereto, to the end that the insured, as well as the insurer, may at any time know the terms and provisions of the contract. Obviously, mere reference in the

policy to the application, containing portions of the contract and constructive adoption thereof, do not amount to a compliance with this requirement, and the court properly refused to permit the introduction of the application for the purpose of proving a warranty not stated on the face of the policy or in any paper attached thereto.

Though inadmissible to prove statements of the insured as a warranty or part of the policy, because not attached to it, the application was admissible, together with other evidence, to prove fraud in the procurement of the policy. A false statement made in the application for a policy is none the less false because made therein, and, if it is an element or fact in a scheme of fraud to procure the issuance of a policy, under circumstances under which it would not be issued if the insurer had been advised of the true situation, it stands upon the same footing as if made in any other paper or way. *Life Ins. Co.* v. *Logan,* 71 S. E. 742; *Johnson* v. *Ins. Co,* 134 Ga. 802; *Life Ins. Co.* v. *Hill,* 70 S. E. 186.

Nor was it necessary to plead fraudulent procurement specially. Fraud, if established, would be a full and complete, not merely a partial, defense, and, as the policy was not under seal, proof of fraud in the procurement thereof was admissible under the general issue on common law principles. The decisions asserting the contrary are not in harmony with ours. It is undoubtedly a common law defense. *Mylius* v. *Engine & Thresher Co.,* 70 W. Va. 576, and *Prewett* v. *Bank,* 66 W. Va. 184. See also *Fisher* v. *Burdett,* 21 W. Va. 626. At common law it was provable under the general issue in debt and assumpsit. 4 Min. Inst. 770, 792, 798; 1 Rob. Prac. (old) p. 210; 2 Saunders Pl. & Ev. top p. 28, mar. p. 526. The allowance of a special plea in the nature of a plea of set-off by chapter 126, Code, does not preclude proof under the general issue. *Sterling Organ Co.* v. *House,* 25 W. Va. 64; 4 Min. Isnt. 792 to 798. The purpose of that statute is to make the fraud or other matter of the plea the basis of a cross action and allow a recovery by the defendant from the plaintiff of an excess in favor of the former. It is an enabling statute, enlarging, not restricting, defendant's rights, and fraud may still be proved under the general issue as a mere matter of defense.

The false statement was that the assured had never claimed or received any accident or health insurance benefits. It was first

made in the application for the original policy, dated August 14, 1909, and again in the application for renewal of the policy, dated August 14, 1910. Holding a health policy in the Travelers Insurance Company, Bowyer, the insured, had made application for indemnity thereunder on the 12th day of April, 1905, on account of illness and incapacity to work by reason of la grip and pleurisy, and on the 4th day of May, 1905, had received by way of such indemnity $20.00. These facts only were offered as evidence to prove fraud in the procurement of the policy sued on, if, indeed, it was offered for such purpose, it having been tendered primarily to prove the statement as a part of the policy and warranty of the truth thereof, so as to make it material and binding as a part of the contract. It does not appear whether, if a truthful answer had been made to the question as to prior receipt of accident or health benefits, the company would have issued the policy. Nor does it appear that the assured, at the date of the application, was suffering from any chronic or incurable disease. Nor does it appear that in the procurement of benefits under the policy in the Travelers Insurance Company he perpetrated any fraud. Nor is there anything to indicate his recollection, at the date of the application, of the receipt of benefits under a former policy. For all that appears, the false statement was an innocent mistake. It requires more than a mere false statement to prove fraud. It must have been made with intent to mislead and deceive, and the injured party must have relied upon it. This evidence was wholly insufficient to sustain the issue of fraud. *Medley* v. *Ins. Co.,* 55 W. Va. 342. There was no offer of additional evidence nor any representation to the court that the defendant, if permitted to put in evidence this false statement, would supplement it with additional evidence, sufficient to establish fraudulent procurement of the policy. The trial court may properly exclude evidence constituting no defense. *Walker* v. *Strosnider,* 67 W. Va. 39; *Easy Payment Co.* v. *Parsons,* 62 W. Va. 26. Even though the action of the court in refusing to permit this evidence to be offered be regarded as technically erroneous, the error ought not to justify reversal, for fraud as a matter or ground of defense was not clearly and plainly brought to the attention of the trial court. The evidence was offered for an entirely different purpose and the record shows no suggestion or intimation to the court of intent on the part of the defendant to rely upon it as

proof of fraud in the procurement of the policy. Nor, as has been stated, was there an intimation to the court of the possession of additional evidence of fraud.

Ella Bowyer, wife of Jordan H. Bowyer, the assured, was the beneficiary named in the policy, and the real issue arising out of the evidence admitted was, whether the death of the insured had been occasiond by external, violent and purely accidental means and independently of all other causes in conformity with a condition of the policy. The death of the insured was due to rupture of the bladder. At least such was the cause, in the opinion of physicians testifying as experts, disclosed by the result of an autopsy. They further expressed the opinion that the rupture had been caused by external violence. Both the wife and the mother-in-law of the insured testified to his injury by a fall in his room, coincident with the inception of the bladder trouble from which he died. Testifying further, they say he was in good health before he fell. Both say there was on his abdomen after the fall a red rough place, indicative of percussion or violent contact with some object. Their theory is that he stumbled over a coal scuttle and fell on or against a bed. To meet the case thus made, the defendant set up the theory of death from disease rather than violence. No evidence was adduced in support of this theory except a letter from Mrs. Bowyer, the beneficiary, to the defendant company, dated the day after the accident, saying: "This is to let you know that Jordan H. Bowyer has been (sick) & on bed for several days also his wife and not able to write you before. Please send blank." This is nothing more than a written statement, contradictory of the testimony of the writer and the other witness, her mother. Only a few days before the date thereof, the writer had been delivered of a child and was on her sick bed at the time of the accident to her husband. This circumstance is relied upon in argument as one accounting for inaccuracy of statement in the letter. The letter does not prove a case of illness from disease, resulting in the death of the insured. As matter of impeachment of the testimony of the writer, it was admissible, but its value was a question for the jury. Clearly the right of recovery depends upon the credibility of these two witnesses and that is pecu-

liarly a question for jury determination. We are unable to say the verdict is contrary to the evidence.

Perceiving no error in the rulings of the trial court, we affirm the judgment.

*Affirmed.*