JAMES P. NEWELL, Public Administrator, in Charge
of the Estate of JOHN PLUECK, Deceased, Ap-
pellant, v. AETNA LIFE INSURANCE COMPANY
OF HARTFORD, CONNECTICUT, Respondent.

St. Louis Court of Appeals. Opinion Filed December 4, 1923.

1. **INSURANCE: Accident Insurance: Evidence: Manual Classifying
Risks: Admissibility.** In an action on an accident policy of in-
surance, the company's manual or classification of risks referred
to in the policy as governing the amount of liability, and provid-
ing that if the insured is injured after having changed his occupa-
tion to one rated by the company in a more hazardous class than
the premium paid covers, the company's liability will be limited
to such sum as the premium paid will purchase within the limits
fixed by the company for such occupation, though not annexed or
made a part of the contract in express terms, is competent evi-
dence for the purpose of showing how insured's occupation was
classified.

2. ————: ————: **Right to Insist on Classification of Risks: Knowl-
ege of Change of Occupation: Waiver: Not Waived by Agent Sug-
gesting Continuation of Premiums.** Where under an accident insur-
ance policy insured changed his occupation to a more hazardous
one, such fact would not authorize a cancellation but would only
reduce the amount of payment to be made to the beneficiary in the
case of death, and defendant did not waive its right to contend for
such classification because its agent urged that the payment of
the premiums be continued, even though he knew that the insured
was engaged in a more hazardous occupation at the time.

3. ————: ————: **Policy: Construction: Change to More Hazardous
Occupation: Amount of Liability.** Under an accident insurance
policy providing that the original principal sum insured by it
will be increased five per cent each year for ten years, and that if
the insured is injured after having changed his occupation to one
rated by the company in a more hazardous class than the premium
paid for the policy covers, or while temporarily or otherwise
engaged in doing any act or thing pertaining to an occupation so
rated, except ordinary duties about his residence or while engaged
in recreation, the company's liability shall be only such proportion
of the principal sum or other indemnity as the premium paid by
him will purchase at the rate and within the limits fixed by the

company for such more hazardous occupation, and the classification showed that the occupation of the insured at the time of his death was classified as extra perilous, and that the limit of the risk was $500 for the premium paid, *held* that the accumulation provision of the policy applied only to the original principal sum, and not to the sum of $500, consequently said sum was the limit of insurer's liability.

Appeal from the Circuit Court of the City of St. Louis.— *Hon. Franklin Miller,* Judge.

AFFIRMED.

*Daniel J. O'Keefe, Peter T. Barrett* and *James J. O'Donohoe* for appellant.

(1)   The trial court erred in giving and refusing instructions and in admitting defendant's manual of classification of risks for the following reasons:   (a) The more hazardous and classification of risks clauses are overriden and nullified by the general insuring clause.   Drucker v. Western Indemnity Co., 204 Mo. App. 516; Parker v. Sovereign Camp, W. of W., 196 S. W. 424. (b)   The statement of the insured in his application that his occupation was that of a butcher does not amount to a continuing warranty that such shall continue to be his occupation, or that he will not engage in any other occupation.   It is, at best, a mere statement of an existing fact.   Prov. Life Ins. Co. v. Fennell, 49 Ill. 180.   Warranties have been abolished by statute.   Keller v. Ins. Co., 198 Mo. 372.   (c)   The stipulation reducing the amount of insurance in the event insured is injured after having changed his occupation to one rated by defendant in a more hazardous class is void and of no binding effect, for the reason that said stipulation contravenes section 6934, R. S. 1909, now section 6139, R. S. 1919, prohibiting

the making of contracts of insurance or agreements as to such contracts other than as "plainly expressed" in the policies.  (d)  And further, said stipulation is void because in conflict with section 6952, R. S. 1909, now section 6157, R. S. 1919, and section 6972, R. S. 1909, now section 6178, R. S. 1919, providing that every policy "shall specify the exact sum of money which it promises to pay upon each contingency insured against."  Melville v. Business Men's Assur. Company of America, 253 S. W. 68.  (e)  The insurance cannot be whittled because neither the more hazardous occupation, table of rates nor classification of risks is set forth in the policy, attached thereto, endorsed thereon nor made a part thereof.  Miller v. Ins. Co., 168 Mo. App. 330.  (f)  Insured did not change his occupation, for soldiering is not an occupation. Gotfredson v. German C. Accident Co., 218 Fed. 582 (cases cited); Supreme Lodge v. Baker, 163 Ala. 518; 6 Cooley, section 207 (b), page 760 (cases cited).  (g) In any event it devolves upon defendant to plead and prove that soldiering is more hazardous than butchering, "not merely that it was so classified." Ogilvie v. Aetna Life Ins. Co., 209 Pac. 26.  (h)  And whether the insured changed his occupation, not merely that it is so classified, is a question not for the court, but for the jury. Supreme Lodge v. Baker, 163 Ala. 518; Gotfredson v. German C. Accident Co., 218 Fed. 582; Aetna Life Ins. Co. v. Dunn, 138 Fed. 629; Everson v. General Accid. & Assur. Corp., 202 Mass. 169; Taylor v. Ill. Comm. Men's Ass'n, 84 Neb. 799.  (i)  The policy stipulated that: "In any State where the law so provides, the classification of risks shall be based upon the last manual in use prior to the date of accident of which a copy shall have been filed with the Commissioner of Insurance of said State."  The law of Missouri does not so provide. Hence the manual offered and received in evidence is incompetent and cannot affect the amount of insurance. (j)  To allow the contract to be affected by an after-compiled table of rates or classification of risks would be an impairment of contract.  Dessauer v. Maccabees,

278 Mo. 57.   (k)   Insured's sister informed Jerome Karst, defendant's agent, prior to payment of last premium, that insured was a soldier and he encouraged her to pay the premium. This operates as a waiver of the right, if any existed, to scale the amount of insurance. Brabham v. Ins. Co., 253 S. W. 786; Sovereign Camp v. Little, 225 S. W. 574.· An agent is the *alter ego* of the company, with power "to alter, waive, rescind or vary the whole or any provision of the policy, notwithstanding the policy provides that 'no contract, alteration or discharge of contract, waiver of forfeiture, nor granting of permits or credits, shall be valid unless the same shall be in writing, signed by the president or vice-president and one other officer of the association.' " James v. Life Association, 148 Mo. 1; Peebles v. Columbia Woodmen, 164 S. W. 296.   And since a corporation can only act through agents, provisions against waiver, modifications and alterations by agents are void. 1 Mechem on Agency, pp. 765-766, cases cited. The knowledge of the soliciting agent is imputable to the company. Henry v. Sneed, 99 Mo. 407; Kearns v. Casualty Co., 150 Minn. 486; 7 Cooley, section 2521 (c), pp. 933, 934, page of cases cited; 21 R. C. L., pp. 838-840, cases cited; 3 R. C. L. (Supp.), p. 1195; 1 Mechem, sec. 1049; Ins. Co. v. Scott, 218 S. W. 53.   Indeed, it is conclusively presumed that the agent communicated to his principal all facts known to him. 2 Mechem on Agency, section 1806, p. 1390,·cases cited. (1)   Even taking defendant's viewpoint, the amount of the verdict is inadequate under the accumulations clause of the policy. (2)   The insured came to his death through accidental means within the meaning of the policy. Under the authorities no distinction is made between death by accident and one by accidental means. Interstate Business Men's Acc. Asso. v. Lester, 257 Fed. 225, writ of *certiorari* denied in 250 U. S. 662; State Life Ins. Co. v. Allison, 269 Fed. 93; Eicks Admr. v. Fidelity & Casualty Co., 253 S. W. 1029; Young v. Railway Mail Ass'n, 126 Mo. App. 325; Lovelave Travelers' Protective

Ass'n, 126 Mo. 104; Acc. Co. v. Carson, 99 Ky. 445; Campbell v. Fidelity & C. Co., 109 Ky. 670; Feder v. Iowa State Traveling Men's Ass'n, 107 Iowa, 538; Phoenix Acc., etc., Ass'n v. Stiver, 42 Ind. App. 636; Throop v. Western Indemnity Co., 193 Pac. 269; Collins v. Fidelity & Casualty Co., 63 Mo. App. 253; Withers v. Pacific Mutual L. Ins. Co., 58 Mont. 485; Harper's Admr. The Phoenix Ins. Co., 19 Mo. 506; Lewis v. Ocean Accident & Guarantee Corporation, 224 N. Y. 18; Summers v. Fidelity Mutual Aid Asso., 84 Mo. App. 605; Atlanta Acci. Asso. v. Alexander, 104 Ga. 709; General Acci. & Life Assur. Corp. v. Meredith, 141 Ky. 92; United States Casualty Co. v. Griffis, 186 Ind. 126; Nax v. Travelers' Ins. Co., 130 Fed. 985; Rowe v. United Commercial Travelers, 186 Iowa, 454; Lewis v. Iowa State Traveling Men's Ass'n, 248 Fed. 602; Allen v. Travelers Ass'n, 163 Iowa, 222; Starr v. Aetna Life, 41 Wash. 199; Union Accident Co. v. Willis, 44 Okla. 578; Hutchcraft's Exr. v. Travelers Ins. Co., 87 Ky. 300; Utter v. Ins. Co., 65 Mich. 545; American M. Benefit Ass'n v. Joshua, 200 S. W. 261; Nat. Life & Acc. Ins. Co. v. Hodge, 244 S. W. 862; Great Southern Life v. Churchwell, 216 Pac. 676.

*Jones, Hocker, Sullivan & Angert* for respondent.

NIPPER, C.—This is a suit on an accident policy of insurance, brought by the Public Administrator of the city of St. Louis, who was in charge of and administering upon the estate of John Plueck, deceased. The policy was issued on the fifth day of August, 1911, insuring the said John Plueck for a period of one year therefrom, against bodily injury caused solely and directly by external, violent, and accidental means (excluding suicide whether sane or insane). The policy was renewed annually, up to and including the fifth of August, 1918. Plueck died on the thirtieth of September, 1918. The following provisions of the policy are set out in the abstract, and referred to as being the material parts of the policy that in any way affect the controversy here:

"Principal Sum, First Year .........$2,000.00
"Increasing to ..................... 3,000.00

"In Consideration of the premium of Fifteen and no/100 Dollars, and of the statements in the Schedule of Warranties endowered hereon, which statements the Insured makes by accepting this Policy and warrants to be true, the

"Aetna Life Insurance Company, of

Hartford, Connecticut,

"Does Hereby Insure the person named and described in said Schedule for the term of 12 months from the 5th day of Aug., 1911 (commencing and ending at twelve o'clock noon, standard time), against disability or death resulting directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means, suicide (sane or insane) not included, as follows:

"Part I.   General Indemnities.

"If such injuries alone totally disable the Insured, that is, immediately, continuously and wholly prevent him from performing any and every kind of duty pertaining to his occupation, and during the period of such continuous total disability and within ninety days from date of accident, result in any one of the losses described below, the Company will pay the sum specified opposite such loss and in addition will pay weekly indemnity for the period of such disability at the rate per week provided in Part II-A; or, if such injuries alone result within ninety days from date of accident in any one of the losses described below, without such disability, the Company will pay the sum specified opposite such loss.

"Loss of:

"A.   Life  .  .  .   The   Principal   Sum   of   Two Thousand Dollars.

"Part V.   Accumulations.

"The original principal sum hereby insured will be increased five per cent in the second and each subsequent year for ten consecutive years, until such increases amount to fifty per cent. of the original sum insured, and thereafter, the amount insured will be the original Principal Sum plus the accumulations."

"Part IX.   Non-Forfeiture Provision.

"If the Insured is injured after having changed his occupation to one rated by this Company in a more hazardous class than the premium paid for this policy covers, or while temporarily or otherwise engaged in doing any act or thing pertaining to an occupation so rated, except ordinary duties about his residence or while engaged in recreation, the Company's liability shall be only such proportion of the Principal Sum or other indemnity as the premium paid by him will purchase at the rate and within the limits fixed by this Company for such more hazardous occupation.   Any unearned premium in excess of the amount required for such limits will be refunded upon demand.   In any State where the law so provides, the classification of risks shall be based upon the last manual in use prior to the date of accident of which a copy shall have been filed with the Commissioner of Insurance of said State."

"F.   In any State where the law so provides, this policy with the Schedule of Warranties and such other papers as may be attached or endorsed hereon shall constitute the entire contract between the Company and the Insured except as same may be affected by the table of rates or classification of risks filed by the Company with the Commissioner of Insurance of the State in which this policy is issued and no statement made by the Insured which is not incorporated in this policy or endorsed hereon shall void this policy or be used in evidence."

"H.   An agent has no authority to change this policy or to waive any of its terms, nor shall notice to an agent or to any other person or knowledge of an agent or of any other person be held to effect a waiver or change in this policy or any part of it.   No change whatever in this policy and no waiver of its conditions shall be valid unless an endorsement is added hereto signed by the President, Vice-President, Secretary or Assistant Secretary of the Company expressing such change or waiver."

Under the schedule of warranties we find the following:

"6. My occupation is Butcher, Market Stand, and the duties of my occupation are fully described as follows: Not slaughtering or delivering.

"7. I understand that risks are classified according to occupation, and that my occupation above described is classified Ordinary."

The following facts were stipulated and agreed to by the parties to this action:

"1. That the plaintiff, at and prior to the institution of this action, was the duly qualified and acting Public Administrator of the City of St. Louis, Missouri, and, as such, was and is now in charge of and administering upon the estate of John Plueck, deceased.

"2. That the defendant is a corporation duly organized under the laws of the State of Connecticut and, as such, is duly authorized to do the business of accident insurance in the State of Missouri.

"3. That on or about the 5th day of August, 1911, the defendant issued to John Plueck its policy of insurance which is filed as Exhibit A to plaintiff's petition; that at the time of the issuance of said policy the occupation of John Plueck was that of butcher.

"4. That said policy as aforesaid was renewed and continued in force from year to year after its issuance by the payment to the defendant of the stipulated premium and said policy was in full force and effect at the time of the death of the said John Plueck as hereinafter set forth.

"5. That the principal sum of said policy, together with the accumulation thereon, amounted at the time of the death of the said John Plueck to the sum of two thousand seven hundred dollars ($2,700).

"6. That on or about the ...... day of ........,
1917, the said John Plueck was either drafted for military service in the Army of the Government of the United States or enlisted therein, and was assigned by the officers in charge of the Army of the United States Government

to field service as a soldier in the said Army; that, thereafter, the said John Plueck was sent overseas, with, and as a member of, the United States Army, to engage in field service in the World War; that on the 30th day of September, 1918, the said John Plueck while so in the aforesaid military service of the United States Government was ordered and directed by the officers in charge of the Army of the United States into the danger zone of the military engagement then taking place between the forces of the enemy and those of the Government of the United States in Argonne Forest, between the Towns of Thierry and Charpentry, in France, Europe. That while the said John Plueck was so situated and stationed in obedience to the orders and directions of said officers in charge of the Army of the United States he was instantly killed by being struck with pieces or fragments of an exploded shell, fired either by the enemy or by the military forces of the United States.

"7. That thereafter, and within the time required by the policy, the plaintiff herein notified the defendant of the death of the said John Plueck, as aforesaid, and demanded of the defendant blanks for making proofs of the death of the said John Plueck; but that defendant denied all liability under said policy on account of the death of the said John Plueck, as aforesaid, and refused to furnish plaintiff blanks for the making of proofs of death.

"8. That plaintiff duly demanded of defendant payment of the amount due under said policy, on the first day of July, 1919, but defendant refused to pay the same and disclaimed all liability under said policy.

"9. That either party may introduce other and further evidence in support of any fact which is deemed material to the issues of this case not inconsistent with the foregoing facts."

Over the objections and exceptions of plaintiff, the defendant offered in evidence a manual or booklet entitled: "Classification of Risks for Accident Insurance. Aetna Life Insurance Company. February 1, 1911." This

classification showed that the occupation of the insured as stated in his application was classed as "ordinary," and that of "soldier in barracks or field service, extra perilous," and that the limit of the risk was $500 for the $15 premium.

There was evidence offered as to the reasonable value of an attorney's fee, but this evidence was offered by the plaintiff. The evidence on the part of the plaintiff also discloses that the sister of the insured, about a year before his death, had a conversation with a Mr. Karst, an agent for the defendant company, in which she informed him that her brother had ceased to be a butcher and had become a soldier, and that Karst encouraged her to keep up the policy and renew the premiums, which she did.

At the close of the whole case the court gave an instruction that, under the law and the evidence, plaintiff is not entitled to recover any sum for vexatious refusal to pay; and that, even if the jury should find in favor of the plaintiff, such plaintiff was entitled to recover from the defendant no greater sum than $500, with interest from the date of suit. In accordance with this instruction, the jury found for the plaintiff for the above amount, from which plaintiff appealed.

It is plaintiff's contention that the trial court did not properly construe the contract in question, and that under the facts of this case the plaintiff was entitled to recover the principal sum named in the policy, together with the accumulations. In this respect plaintiff relies very largely upon the case of Miller v. Insurance Co., 168 Mo. App. 330, 153 S. W. 1081. The court there held, in construing a similar policy, that the manual giving definitions of terms and classification of risks was not admissible, because it was not a part of the policy, nor was it mentioned or referred to therein.

Our Supreme Court, in construing a similar policy, held that the insurance company's liability was limited to the amount the insured would receive while engaged according to the classification of risks as set out in the man-

ual. [Loesch v. Union Casualty & Surety Company, 176 Mo. 654, 75 S. W. 621.] The question of whether or not the manual was competent evidence was not directly involved in the Loesch case, supra. But, even though it was not, we think it was competent in this case, because paragraph nine of the policy, the same being the non-forfeiture section, provides that, if the insured is injured after having changed his occupation to one rated by this company in a more hazardous class than the premium paid covers, the company's liability shall be limited to such sum as the premium paid will purchase within the limits fixed by the company for such hazardous occupation. The "Classification of Risks" is referred to therein as well as in paragraph F. The manual, as it is called, when offered in evidence, was referred to as the "Classification of Risks." This is mentioned in the contract, and reference thereto is sufficient without actual annexation. [13 C. J., sec. 488, p. 531.] And even though such manual or "Classification of Risks" was not made a part of the contract in express terms, it was referred to as governing the liability of defendant while the insured was engaged in certain occupations, and we see no reason why it would not be competent evidence for the purpose of showing how insured's occupation was classified. Such a manual was held to be competent evidence for that purpose, even though not made a part of the contract in express terms. [See McCarthy v. Pacific Mutual Life Insurance Co., 178 Ill. App. 502.]

Learned counsel for appellant insists that defendant waived its right to contend for such classification, because its agent, Karst, urged that the payment of the premiums be continued, even though he knew that the insured was in the army at the time. The doctrine of waiver or estoppel cannot be invoked in this kind of a case. Such a doctrine is usually invoked where the company exacts a forfeiture for some breach of warranty or something of that kind, or where the insured has been led to do some act to his prejudice and expense by some act of commission or omission on the part of the company. But to per-

mit the doctrine to be applied in this case would be to create a liability not created by the contract, and one which the defendant never assumed. [Ruddock v. Detroit Life Insurance Co. (Mich.), 177 N. W. 242; Miller v. Illinois Bankers' Life Association, 138 Ark. 442.] The suggestion of the agent that insured continue to pay the premiums after such agent had knowledge that insured was in the army could not be held to be a waiver, because such fact would not authorize a cancellation but, would only reduce the amount of payment to be made to the beneficiary in case of death.

The insured met his death while in the military service of the United States Government, and while situated in the danger zone of the military engagements then taking place between the forces of the enemy and those of the Government of the United States, in obedience to the orders and directions of the officers in charge of our army. He was therefore concededly engaged in an occupation other than that of a butcher, and classified by the company as a more hazardous occupation.

It is finally insisted by learned counsel for appellant that the verdict is inadequate, even under the construction here placed upon the policy, because the provision for accumulations should apply to the sum of $500 admitted to be due. But the accumulation provision of the policy applied only to the "original principal sum."

It follows, therefore, that the judgment should be affirmed. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.*, concur.