EDNA WORKMAN v. CONTINENTAL CASUALTY COMPANY

(No. 7611)

Submitted April 17, 1934.   Decided June 12, 1934.

*James Damron* and *Philip Angel,* for plaintiff in error.
*Fitzpatrick, Brown & Davis* and *Jackson N. Huddleston,* for defendant in error.

LITZ, JUDGE:

This is an action in assumpsit by Edna Workman as beneficiary in a health and accident insurance policy for $2,000.00 issued in 1925 by defendant, Continental Casualty Company, to her husband, Amos Workman, "as a passenger brakeman or baggageman on train". He lost

his life by accident February 16, 1931, while engaged as a freight brakeman in the service of the Chesapeake & Ohio Railway Company. In his application, attached to the policy, Workman stated that his occupation was "passenger brakeman or baggageman on trains". The policy provides that if the insured is injured while engaged in an occupation classified in the manual of risks prepared by the insurer as more hazardous than that stated in the policy, it will pay only such portion of the indemnity provided in the policy as the premium would have purchased at the rate fixed for the more hazardous occupation in the manual of risks. On March 11, 1931, defendant settled with Mrs. Workman, in accordance with this provision, for $777.10 and obtained from her a written release, of the claim, under seal. Defendant, by written specification, set up the provision, the settlement and release as complete defense to the action. Plaintiff replied that the insured at the time of applying for the policy informed the soliciting agent of defendant that his employment required him to serve as a conductor, passenger brakeman, baggagemaster and freight brakeman for the C. & O. Railway Company, and that she accepted the payment of $777.10 and executed the release, in ignorance of her rights under the policy, upon the representations of the agent of defendant, conducting the transaction in its behalf, that she could not collect any greater amount. The trial court, sitting in lieu of a jury, found for the defendant and entered judgment of *nil capiat.*

Defendant would uphold the judgment of the circuit court upon the grounds (1) that plaintiff cannot challenge the release in an action at law; (2) that the evidence is insufficient to set aside the release; and (3) that she is bound by the provision of the policy limiting the indemnity to the amount stated in the manual of risks. Plaintiff insists that the release may be attacked in this action and that the manual of risks, which is neither a part of the policy nor attached thereto, cannot be resorted to for any purpose.

It is urged by defendant that a release cannot be attacked at law for fraud in the inducement, as contradis-

tinguished from fraud in the execution. This position is taken not solely because the instrument in question is sealed, but it is insistently maintained for that reason. The sealing of written instruments originated at a time when few persons could write; hence the custom of executing a document by stamping thereon an impression in wax, technically called a seal. Notwithstanding the reason for the practice no longer exists, some law courts still ascribe sanctity to this senseless form which has degenerated into a mere scroll or flourish of the pen. The tendency, however, is to ignore in large measure the technical distinctions between sealed and unsealed instruments so jealously guarded by the common law. A clear, able, forceful and comprehensive discussion of the subject is presented in *Wagner* v. *National Life Insurance Company,* 90 Fed. 395, wherein Judge Taft, later Chief Justice, in writing the opinion of the court, said: "Even courts of common law must partake of the spirit of progress. * * * The inconvenience of compelling a plaintiff in an action at law, who was met by a plea of release, to resort to an expensive and vexatious proceeding in equity to set it aside for fraud, led courts of law to exercise what has already been alluded to as their equitable jurisdiction to defeat the plea. * * * There is good ground for believing that when the fraud was committed by the defendant in procuring the release directly from the plaintiff, and not from a third person, this matter could be set up by replication; and this, even if the fraud did not go to the execution of the release, but only consisted of misrepresentation of material facts. * * * Except for the peculiar sanctity anciently attaching to a sealed writing at common law, which is now disappearing, it is difficult to see how there could be any doubt about the right in an action at law to avoid a release by a reply of fraud. * * * Our conclusion is, therefore, that it is proper in a suit at law for the plaintiff to meet a plea of release by a replication that the release was obtained by fraud, whether the fraud is in the execution, or in misrepresentation as to material facts including execution. We are glad to come to this conclusion, because

it avoids circuity of action, and thus facilitates the administration of justice."

In *McCary* v. *Monongahela Valley Traction Company* (an action for personal injuries), 97 W. Va. 307, 125 S. E. 92, this court overruled or ignored a demurrer to a replication charging that a release of the claim, under seal, interposed by special plea, was obtained by fraudulent inducements. A similar ruling is found in *Danchatz* v. *Page Coal & Coke Company*, 110 W. Va. 212, 157 S. E. 404. "A seal is an essential requisite of a 'release', in the technical sense of that word as known to the common law; but the tendency of modern legislation and judicial decision is to minimize or abolish the common-law efficacy of the seal, in consequence of which an instrument not under seal may operate as a release, provided that it rests upon a sufficient consideration, and that the language used shows that it was intended as a release." 53 C. J., p. 1198. Seals to instruments relating to the transfer of land or interest in land have been abolished in West Virginia. Code 1931, 36-3-1. A liberalized practical policy is further evidenced by Code 1931, 56-5-5, permitting the defense of fraud in the procurement to any action on contract.

Moreover, assumpsit is an equitable action maintainable ordinarily in any case involving the withholding of money by defendant to which plaintiff is, in justice and conscience, entitled. *Keener* v. *Bank of Gassaway*, recently decided by this court, 114 W. Va. 780, 173 S. E. 884.

The evidence supports the replication, setting up the release. The circumstances attending its execution amply justify the conclusion that Mrs. Workman acted, in ignorance of her rights, under the influence of the alleged representations by the agent of defendant conducting the transaction in its behalf. It makes little difference whether these assurances were made in good faith or with an intention to deceive.

By section 62, chapter 34, Code 1923, the contract of insurance is limited to the face of the policy. In *Bowyer* v. *Continental Casualty Company* (an action on an accident and health insurance policy), 72 W. Va. 333, 78

S. E. 1000, this court held that the statute excludes from insurance contracts "all conditions, agreements and warranties not expressed in the policies themselves or papers attached thereto"; and accordingly refused to consider as part of the insurance contract there involved the application of the assured, which had not been attached to the policy. In the opinion of the court, written by Judge Poffenbarger, it is stated: "The purpose of statutes of this kind, as declared by the courts in other states, is to require the contract to be so formed as to enable the insured or assured at all times to have before him the covenants and agreements which he is required to observe or perform and relieve him from the burden of relying upon his recollection of the terms of his contract."

A like ruling was made in *Addison* v. *Commercial Casualty Insurance Company,* 100 W. Va. 1, 129 S. E. 711, wherein the defendant sought to read into the insurance contract (a health and accident insurance policy) its manual of risks referred to in a provision in the policy, similar to the one involved in this case, for the purpose of showing that the risk incident to the vocation (mechanician on a racing automobile) in which the insured was engaged at the time of his death, was classified as uninsurable in the manual. Judge Hatcher, speaking for the court, in the opinion said: "Reference to the classification manual would, under the common law rules, have made it a part of the policy, but as pointed out by this court in *Bowyer* v. *Casualty Company, supra,* the statute has changed that rule so far as it relates to accident policies issued by corporations organized under the laws of another state, as was the defendant company. Mere reference to some other paper and its adoption by the policy, no longer makes such paper a part of the policy. The purpose of the statute, as explained in the *Bowyer* case, is to require *every condition covenant and agreement of the insurance contract* to be expressed in the policy or papers attached, so that the insured at all times may have at hand exact information of his obligations and restrictions. The right of the insured may not be sub-

jected to a classification manual of which he has vague, if any, information or memory. If the classification manual was no part of the policy, then it had no place in the evidence . *It was not competent for any purpose."* The opinion also expressed the view that if the manual had been admissible for any purpose it could not have been accepted as conclusively establishing the relative hazards of different occupations. In this connection, it is stated: "Whether the (automobile) race was obviously dangerous depended on the skill and carefulness of the drivers, the construction of the automobiles, the rate of speed, the distance to be run, the condition of the track, and perhaps other factors entering into the race, and not on an *ex parte* classification prepared by the defendant." It is proposed to give effect to the policy provision, under consideration, notwithstanding the statute and the well considered decisions thereon, by holding that the manual may be looked to for the purpose of ascertaining the amount of indemnity to which the plaintiff is entitled, after extrinsic proof that the insured was, at the time of his death, engaged in an employment more hazardous than that stated in the policy. This theory seems to recognize the danger of going beyond the insurance contract to the extent of accepting the classification of risk without original evidence that the insured was engaged in a more hazardous employment at the time of his death than that stated in the policy. I can see no difference in accepting the manual for the classification of risks and resorting to it for the purpose of determining the amount of indemnity. Besides, a finding from evidence, independent of the classification of risks in the manual, that the occupation in which the insured was engaged at the time of his death was more hazardous than that stated in the policy could serve no purpose in the case. *The application of the provision depends not upon the actual differences in risks of various occupations but solely upon the arbitrary classification in the manual of risks.* So that, in order to effectuate the provision of the policy, in contest, it is absolutely necessary to consult the manual not only for the purpose of deter-

mining the amount of indemnity but also to ascertain whether the risk has been increased within the meaning of the policy. A change in the amount of the indemnity is dependent upon a change in the risk according to the classification in the manual and not upon proof that the insured was, at the time of his death, engaged in an occupation more hazardous than that stated in the policy. The call of justice in opposition to the statute was more appealing in *Addison* v. *Insurance Company,* than it is in this case. Yet, full recovery was there permitted, although the plaintiff was not entitled to any indemnity according to the manual. *McCarthy* v. *Pacific Mutual Life Insurance Company of California,* 178 Ill. App. 502, and *Newell, Public Administrator* v. *Aetna Life Insurance Company of Hartford, Conn.* (St. Louis Court of Appeals), 258 S. W. 26, are relied upon to justify the enforcement of the provision in question. A statute similar to ours was considered in the first case. The court in holding that the classification in the manual of risks should be adopted in determining the amount of indemnity, said: "We agree with counsel for appellant that the manual of occupations was not part of the policy. We are unable, however, to see why it may not be looked to for the purposes for which the parties have agreed it shall be." *This court has held in no uncertain terms that the duty of the judiciary to observe a plain and positive statute is a sufficient reason why the manual may not be looked to.* Besides, it involves a contradiction of terms to say that although the "manual of occupations" is no part of the policy it may nevertheless be considered a part thereof. The policy constitutes the contract of insurance. But if the contract consists of something more than the policy, as seemingly argued by the intermediate court of Illinois, the situation would remain unchanged. The statute limits the *contract* to the face of the policy. The St. Louis court, without disclosing whether any statute was involved, adopted the ruling in the Illinois case. The changing of occupation by the insured did not forfeit the policy. *Beane v. Casualty Company,* 64 So. 732, cited by counsel for defendant. The policy was, there-

fore, in force at the death of the insured. The only issue is whether the benefits thereunder may be cut down by an inadmissible document. We hold, in accordance with the statute and our previous decisions, that this cannot be done, and that plaintiff is entiteld to recover the face of the policy less the amount received by her from defendant at the time of executing the release. The case is remanded for judgment to be entered accordingly.

*Reversed and remanded.*

Hatcher and Maxwell, Judges, dissenting.

MAXWELL, JUDGE:

For the reasons here presented Judge Hatcher and I respectfully dissent.

Where a person who is protected by accident insurance is killed or injured while engaged in an occupation obviously more dangerous than that named in his application and policy, what is the status of the contracting parties? There are three possible alternatives: (1) to deny all right of recovery under the policy, (2) to require the insurer to pay the indemnity regardless of change of vocation, or (3) to permit recovery for such an amount as the premiums paid by the insured would have purchased at the rate fixed by the company for the more hazardous occupation. To deny all recovery under the policy would impose great hardship on the insured or his estate or beneficiary, for, although premiums would have been paid for protection] of the life and limb of the insured, there would be no protection. And under the second alternative if recovery be enforced for the amount specified by the policy for death or injury, a wrong is thereby done the insurer because of the requirement that it discharge the burdens and meet the consequences of a risk which it had not assumed. The third alternative would seem to be fair and equitable in that it places no hard-

ship on either party, and permits recovery on a definite basis in exact proportion to the premiums paid and the risk involved. Reason and justice therefore require that such latter course be upheld unless it be in clear violation of statute.

There is a statute of this state which requires that an insurance or casualty company such as the defendant "shall state on the face of its policies or certificates all agreements with the assured". Code 1931, 33-6-2. Construing and applying that section, this court held in *Bowyer* v. *Casualty Co.*, 72 W. Va. 333, 78 S. E. 1000, that an application for accident insurance may not be deemed a part of the contract unless attached to and made part of the policy, that mere reference to it in the policy is not sufficient; and in *Addison* v. *Casualty Company*, 100 W. Va. 1, 129 S. E. 711, it was held that reference in a casualty policy to a classification manual issued by the insurer does not make the manual a part of the contract. In that case the assured had obtained his policy under the classification of automobile repairman employed in a garage. He was killed while serving as mechanician on an automobile in a public race. The court held that under said statute it was error for the trial court to admit in evidence over the objection of the plaintiff, beneficiary under the policy, a paragraph of the classification manual which denominated the vocation of racing mechanician as uninsurable because of the extreme danger involved; that the said paragraph of the manual must be rated merely as a self-serving declaration; that the degree of danger involved was a question of fact not to be determined by the ex parte classification prepared by the defendant.

Plaintiff at bar takes the position that under the statute and the said two cases construing it the defendant's classification manual could not be referred to by the trial court for any purpose in determining the rights of the parties under the contract. We do not think that either the *Bowyer* or the *Addison* case announces a principle which is controlling of the particular question here involved. In the *Bowyer* case it was declared that the pur-

pose of the statute is "to enable the insured or assured at all times to have before him the covenants and agreements which he is required to observe or perform and relieve him from the burden of relying upon his recollection of the terms of his contract." That statement is, of course, basically sound, and we would in no wise depart from it. In the *Addison* case the essence of the holding was that in the trial of an action on such policy reference may not be had to a classification manual, not attached to the policy as a part thereof, for the purpose of determining the degree of hazard of a particular vocation. For the reasons given in support of said holding, we likewise adhere to it as basically sound.

But where it appears from competent evidence at the trial that the assured has been killed or injured in a vocation more hazardous than that under which he was insured, we think that reference may then be had to the company's classification manual to determine the amount of insurance which the premiums paid by the assured will purchase under the more dangerous vocation in which he has become engaged subsequent to the obtaining of the policy. The statute certainly does not in terms inhibit such a course. Its requirement is that the insurer shall state on the face of the policy all agreements with the assured.

Where the parties, as at bar, specifically agree by a definite provision of the policy that if the assured changes to a more hazardous occupation and is injured or killed thereunder, he or his beneficiary shall receive such indemnity as the premiums paid by him would purchase under the more dangerous vocation, such rate to be determined from the insurer's classification manual, it would seem that the purpose of the statute, namely, to enable the assured "at all times to have before him the covenants and agreements which he is required to observe or perform" is entirely realized. The only matter left to reference *aliunde* is the premium rate to be determined from the company's classification manual which is too bulky a document to be attached to and made a part of every accident policy issued.

While under the principle of the *Addison* case, *supra,* the classification manual may not be employed in evidence to determine a factual matter, such as the degree of hazard of a given occupation, we perceive no reason why the manual may not be consulted to determine the actuarial matter of the premium rate for a given vocation or calling. By their contract, the parties have agreed that such course might be taken. To extend the terms of the above quoted statute to preclude such course will produce a result at variance with the purpose of the statute. It was designed primarily for the protection of holders of accident policies. The interpretation adopted by the court will operate to the prejudice of such policy holders if the result will be that persons killed or injured in vocations more hazardous than those under which they were insured will be subjected to the risk of forfeiture of all rights under their policies because of breach of the condition pertaining to employment upon which the policies were issued.

The matter is thus discussed in *McCarthy* v. *Insurance Company,* 178 Ill. App. 502: "It is also well known that persons change their employment. In order to avoid the forfeiture of the policy and the loss to the insured of all the premium paid by him, in case, after the policy is issued, he embarks in some business more hazardous than the one he was engaged in when insured, it has come to be the practice of insurance companies to provide by some apt language in the policy some plan or scheme whereby, when the assured does change his occupation, the indemnity shall be proportionate to the hazard of the new employment and rate paid."

Our attention has been directed to two Missouri cases forcefully illustrative of the proposition here under consideration. And though it does not appear from the opinion whether Missouri has a statute similar to ours, the cases are nevertheless of great value on the basic principles involved. In *Miller* v. *Life Insurance Co.,* (Mo.) 153 S. W. 1080, the deceased obtained an accident policy under the classification of traveling and supervising contractor. Later, while assisting some workmen in

the installation of certain lighting and heating equipment, he was accidentally killed. The insurer by its manual of risks classified a working contractor as a more hazardous risk than a traveling and supervising contractor. For the purpose of establishing the fact, the manual was offered in evidence by the insurer, but it was held that the trial court properly refused to admit it in evidence. In the later case of *Newell* v. *Life Insurance Company*, (Mo.) 258 S. W. 26, the deceased obtained an accident policy under the classification of butcher. Later, he was killed as an American soldier in action in France. His beneficiary was permitted to recover not the face of the policy but a reduced amount as prescribed by the non-forfeiture clause of the policy, the said clause being similar to the one under consideration at bar. The court held, as stated in the headnote: "The company's manual, or classification of risks, referred to in an accident policy as governing the amount of the company's liability, in case insured is injured after changing his occupation to one rated by the company in a more hazardous class, though not annexed or made a part of the contract in express terms, is admissible to show the classification of the occupations."

A very clear statement of the matters under consideration appears in Fuller's Accident and Employers' Liability Insurance, page 336:

"In most policies of accident insurance, the amount of the liability of the insurance company is dependent upon the occupation of the insured. The risks which are insured against are classified according to the employment, or occupation, and various rates or premiums are charged, according as the employment is more or less dangerous. Most policies provide that certain forbidden hazards shall render the policy void, as well as that the amount of the insurance shall be diminished in proportion to the increase of other hazards. The contract of insurance depends primarily and essentially upon an equitable adjustment of the premiums and the risks assumed. Under these policies of in-

surance the various occupations of life are divided into several classes, depending upon the degree of risk or hazard which they involve. Manifestly, one engaged in the sedentary pursuits of life is less liable to accident or accidental death than one engaged in the more dangerous pursuits, such as railroading, mining, sailing, and the like. The clause which provides for the reduced indemnity is regarded by the courts as a special contract, contemplating a future change of occupation by the assured. Such a change of occupation does not avoid the policy. It simply limits the amount of indemnity so as to accord with the increased hazard."

In the light of a statute such as ours, if an insurance company desires to proscribe certain hazards the same should be set forth in the policy or in a paper attached thereto as part thereof. That would solve situations such as arose in the *Addison* case. Reference may not in such instance be made to a classification manual. But where it appears from the evidence that the occupation in which the insured was killed or injured was in fact more hazardous than the one under which he was insured, we are of opinion that reference may be had to the classification manual to determine the rate applicable to such later occupation and thereby fix the extent of the liability of the insurer.

It appearing from the record that the plaintiff as beneficiary of her deceased husband has been paid by the defendant the amount of insurance which the premiums paid by her husband would purchase under the more hazardous occupation (the one in which he was killed) as provided in the defendant's classification manual, we are further of opinion that this court should affirm the action of the trial court in dismissing the plaintiff's action, *nil capiat*.