# CHARLESTON

BUSH v. INDIANA AND OHIO LIVE STOCK INSURANCE CO.

Submitted March 11, 1914.   Decided April 28, 1914.

1. INSURANCE—*Live Stock Policy—Application.*
    Under the statutes of this state, the application for a live stock policy of insurance, to be a part of the policy, must be incorporated in it or attached to it.   (p. 245).

2. SAME—*Application—Evidence—Admissibility.*
    Though an application for a policy of insurance is not a part of the policy because of failure to attach the same to it, a false statement therein is admissible under the general issue as evidence of fraud in the procurement of the policy.   (p. 245).

3. SAME—*Pleadings—Warranties.*
    So-called pleas and replications relating to warranties or supposed warranties in a policy of insurance are not pleadings in the technical sense of the term. They are mere statements in the nature of bills of particulars and not subjects of demurrer.   (p. 245).

4. SAME—*Proof of Loss—"Paid"—Question for Jury.*
    It is for the jury to say whether the word "paid" in an affidavit, read in the light of proper extraneous evidence, was intended to express satisfaction in money or in a broader and more general sense, as by exchanged property and money.   (p. 246).

Error to Circuit Court, Taylor County.

Action by J. Lester Bush against the Indiana and Ohio Live Stock Insurance Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Benj. F. Bailey,* for plaintiff in error.

*Warder & Robinson,* for defendant in error.

POFFENBARGER, JUDGE:

The defense to this action on a policy of insurance is predicated upon what is regarded as the breach of an affirmative warranty in the policy, and the statement relied upon, as constituting the broken warranty, is made the basis of a charge of fraud on the part of the plaintiff.

The insurance was on the life of a stallion and in the sum of $1200.00 and the judgment on the policy is $1247.40.

Whether a false statement was made, and, if so, whether it constitutes a warranty are both matters of controversy. Whether made or not, the face of the policy does not show it. Only in the application does it appear and that was not attached to the policy. It relates to the consideration for the horse, saying it was paid in cash, while, in fact, the horse was taken in exchange for another and a certain sum of money. Evidence tends to prove the false statement, as to the character of the purchase, was inserted in the application by the agent without the knowledge or consent of the insured, and contrary to a truthful statement made to him by the insured.

Not having been attached to the policy, the application is no part of it. *Bowyer* v. *Continental Casualty Co.* 72 W. Va. 333, 78 S. E. 1000. Exemption from the statutes requiring the embodiment of the whole contract in insurance policies is claimed on account of the peculiar character of the insurance here involved, but the argument in support of the claim is groundless. The policy was issued by a company organized under the laws of a state other than this, and is one other than a fire or life company. Hence it falls directly within the letter of the statute.

Since the statement, if made by the insured, is no part of the contract, there is no occasion for inquiry as to the application of the law relating to warranties in insurance policies. The so-called plea and special replication applicable to this phase of the case were properly received. They are not plead-

ings in the strict sense of the term. *Seyler*-v. *British Ameri-can Ins. Co.*, 72 W. Va. 120, 77 S. E. 555.

Exceptions were taken to the giving of four instructions at the instance of the plaintiff. No. 1 left it to the jury to say whether defendant's agent had put false answers in the application, without the knowledge or consent of the plaintiff, and told them payment could not be avoided on account of such answers, if they should find the agent had done so. No. 2 told the jury the affidavit as to the cost of the horse and payment for him, made by the plaintiff after his death, though false, would not preclude recovery, unless wilfully made and with intent to deceive the defendant. No. 3 told the jury the word "paid" had no exact technical meaning and is always liberally construed and does not always mean satisfaction in money. The affidavit, in view of which Nos. 2 and 3 were given, stated affiant had purchased the horse in January 1909 and paid $2200.00 for him. The proof was that he had traded another horse for him, which had cost $1650.00, and paid $450.00 in cash and laid out another $100.00 in expenses of carriage etc. No. 4 told the jury the policy alone embodied the contract between the parties.

Nos. 1 and 4 are obviously correct. Having left the question of intent and purpose to the jury, Nos 2 and 3 were proper also. *Bowyer* v. *Casualty Co.* cited; *Medley* v. *Insurance Co.*, 55 W. Va. 347.; *Insurance Co.* v. *Hogue*, 105 Va. 355. This is especially true, since the plaintiff refused to make affidavit that he had paid $2200.00 in cash for the horse, and the agent who took the affidavit had been fully advised as to the mode of payment when he took the application for the policy.

Defendant's instruction No. 3 telling the jury to find for the defendant, if they believed the plaintiff had made false statements in the application and by means thereof procured the issuance of the policy, was given. Two others requested, No. 1 directing a finding for the defendant, if the jury believed the affidavit was false, and No. 3, directing a like finding, if they believed the plaintiff's purpose, in making the affidavit, was fraudulently or otherwise to deceive the defendant as to the amount paid for the horse, were refused. These two were requested in view of a clause in the policy,

saying: "All fraud or attempts at fraud, by false swearing or otherwise, shall cause a forfeiture of all claims on this company under this policy." They were properly refused. Each of them would have been misleading. No. 1 ignored the latitude allowable in the interpretation of the word "paid." No. 2, applicable to the same subject, was defective in the same way by reason of the generality of its terms. The phrase, "fraudulently or otherwise," qualifying deceive, is too broad. If the affidavit was made without fraudulent intent and truthfully, "paid" being used in its liberal sense, the jury could not have found for the defendant on account of its mere tendency to deceive, for the stipulation in the policy forfeited only for fraud or an attempt to defraud, each of which necessarily involves corrupt intent.

The plaintiff rested his case without proof of the value of the horse, whereupon the defendant moved to exclude his evidence and direct a verdict, and the court expressed intent to do so, unless proof of the value should be adduced; but the plaintiff then moved for leave to prove the value and the court granted it. In this action, there was no abuse of the court's discretion. Certainly the case was not concluded, for there was neither verdict nor judgment and the court still had full and complete jurisdiction.

Nor was there error in the admission of secondary evidence of the contents of certain letters, their loss having been sworn to by the witness.

Seeing no error in the judgment, we will affirm it.

*Affirmed.*