ARTHUR LEFTWICH *v.* INTER-OCEAN CASUALTY COMPANY

(No. 9190)

Submitted September 23, 1941. Decided October 28, 1941.

*McGinnis & Mann,* for plaintiff in error.
*Ashworth & Sanders,* for defendant in error.

LOVINS, JUDGE:

Arthur Leftwich brought a civil action before a justice of the peace in Raleigh County against the Inter-Ocean Casualty Company, on an insurance policy providing for weekly accident and sickness benefits. Judgment was rendered by the justice in favor of the plaintiff in the amount of $127.14, interest and costs. The insurance company appealed to the Circuit Court of Raleigh County, wherein judgment was entered upon a jury verdict for plaintiff in the amount of $125.72, to which action of the lower court this writ of error and supersedeas is prosecuted by the defendant company.

Plaintiff in error filed a plea of general issue and a specification of defense in the circuit court, in which it is alleged that defendant in error's application for the policy contained certain false answers to questions 7 and 8 therein, relating to the soundness of health of the appli-

cant and his freedom from impairment of sight or hearing or any other bodily defects or infirmities. Defendant in error's replication to the specification states that he signed no application for the insurance, but that his wife signed "some kind of a paper for an insurance agent of the * * * insurance company", and further that on the effective date of the policy, he was in sound health and was not suffering from impairment of sight for which he is now claiming benefits.

Leftwich was employed as a motorman in a mining operation of the Pemberton Coal & Coke Company at Affinity, West Virginia, and had been so employed since 1922. He testified that on February 16, 1940, while at work and running the motor by a "nip", an arc from flashing sparks affected his eyes, causing immediate watering and reddening. He stopped working on that day and claims benefits under the policy issued to him by plaintiff in error, from February 24, 1940, to May 31, 1940, the date action was brought in the justice court. (The policy provided that benefits under Sections 2(A) and 3(A) would begin with the eighth day of disability.)

Two physicians, testifying for plaintiff in error, stated that examination of Leftwich after February 16, 1940, revealed that he was suffering from chronic glaucoma in each eye and that, in their opinion, he was so afflicted before January 8, 1940, the date of his application for insurance with plaintiff in error; Dr. Chambers' estimate was from six months to three years, Dr. Peter's about four months "or possibly more". It is shown that Leftwich was at work when two agents for the insurance company called at his home to solicit the insurance, and that Mrs. Leftwich signed her husband's name to the application; she testified that at the time "they asked me was he in good health, and did he have any kind of chronic disease, or anything like that. * * * After I had begun to answer them, Mr. Schmidt (an agent for the insurance company) says, 'Oh, no. I know her husband.' He says, 'He's all-right.' "        ,

The application for insurance was introduced in evidence over objection of defendant in error. Questions 7

and 8, with answers thereto, are the bases of two of the specifications of defense. It is therefore necessary that we consider the application and its relation to the insurance contract. We note that the insurance premiums are payable on a weekly basis; that the insurance covers indemnity for accident and sickness, and that insurer is an Indiana corporation, with its executive offices located at Cincinnati, Ohio. These facts bring insurer within the provisions of Code, 33-6-2, which require that all agreements with the assured be stated on the face of the policies or certificates of insurance. Construing and applying this statute, *Bowyer* v. *Casualty Co.*, 72 W. Va. 333, 78 S. E. 1000, holds that an application for insurance in order to be a part of the insurance contract must be attached to the policy, and this principle is approved in *Bush* v. *Insurance Co.*, 74 W. Va. 244, 81 S. E. 984; *Addison* v. *Insurance Co.*, 100 W. Va. 1, 129 S. E. 711; and *Workman* v. *Casualty Co.*, 115 W. Va. 255, 175 S. E. 63. From the record before us, the application does not appear to have been attached to the policy; therefore, we cannot consider it as a part of the contract of insurance. However, the cases cited hold that an application so treated may be considered with other evidence to show fraud in the procurement of the contract. Without considering whether the answers to questions 7 and 8 are false, or whether the application was improperly admitted over a general objection, it is plain from the evidence shown in this record that any implication of fraud in the procurement of the contract is defeated by the uncontradicted testimony of Mrs. Leftwich that an agent for the plaintiff in error supplied the answers to questions 7 and 8.

Defendant in error introduced in evidence, over the objection of counsel for the insurance company, a card, mailed to Leftwich by the insurance company on April 27, 1940, referring to the payment of ten dollars on "your recent claim." The objection interposed was that its purpose could only be to show a waiver of defenses by the insurance company and that waiver had not been pleaded by defendant in error, as required by Code, 56-4-

22. Leftwich also testified that "the agent" had brought the ten dollar payment to him, and, over objection, introduced in evidence his "statement of account" for each week from February 24, 1940, to May 31, 1940, which statement indicated payment for the week beginning February 24th and ending March 3rd. At the conclusion of the evidence in chief, offered by defendant in error, plaintiff in error moved to strike the testimony with reference to the ten dollar payment; in overruling the motion, the trial court stated, "I think it can go in for what it is worth, not in particular as a waiver of defenses." Defendant in error contends that the sole purpose of such testimony and exhibits indicating payment of ten dollars is to prove the exact amount of benefits claimed.

While, under the provisions of Code, 56-4-22, there can be no doubt that estoppel in matters of this kind must be pleaded, and it appears that such has not been done here, it also appears that there is no reliance by defendant in error upon waiver or estoppel. In the cases cited by plaintiff in error, applying the statute, matters of waiver and estoppel were relied upon without a plea thereof, and therefore such authorities are distinguishable.

Plaintiff in error contends that the statement of the court just quoted was not made in the presence of the jury and that the jury therefore did not know of any limitation as to the purpose of the evidence in regard to the payment. The record does not show whether that ruling of the court was made within or without the jury's presence. However, we believe that the jury was sufficiently apprised of any objectionable features of the evidence in question as bearing upon waiver, at the time of the original objection thereto. Counsel for the insurance company in objecting had stated "* * * in order to show waiver the statute requires it to be pleaded, and it has not been so done." In answer to the court's question "* * * don't you have to stand on your pleadings?", counsel for plaintiff below replied, "* * * at the same time I think it is proper to show that they paid him a week. I can show that to bring up the balance that they do owe him. I don't see how else I can prove what they owe

him." In view of this latter statement in the presence of the jury, we fail to see how they could have been misled as to the purpose of the evidence to the prejudice of plaintiff in error.

The insurance policy provided for weekly benefits of $10.00 in Section 2 (A) thereof, when the insured is "by reason of accidental injury of which there is external evidence, totally disabled from performing work of any nature, and is treated at least once every seven days by a legally qualified physician or surgeon", and also in Section 3 (A) of the policy, where the insured is "by reason of sickness, necessarily and continuously confined to the house and visited therein at least once every seven days by a legally qualified physician or surgeon * * *." Plaintiff in error asserts that the claim for benefits herein does not come within the provisions of Section 2 (A) above quoted because the record reveals no external evidence of accidental injury to Leftwich, and further that the claim does not come within Section 3 (A) for three reasons: (1) The sickness was contracted prior to the effective date of the policy; (2) Leftwich was not necessarily confined to his house; and (3) Leftwich was not visited in his house at least once every seven days by a physician.

The evidence as to disability of Leftwich resulting from an accident is too meager to establish liability of the insurer on that basis and, therefore, we do not concern ourselves with further discussion of recovery under Section 2 (A) of the policy.

However, we believe that the showing here made is sufficient to establish liability of the insurer under Section 3 (A), which provides for sickness benefits. Even if it may be said that the record shows that Leftwich was afflicted with glaucoma simplex prior to the effective date of the policy, there is nothing to indicate that he was incapacitated from the performance of his usual duties prior to February 16, 1940. As stated in *Milam* v. *Indemnity Co.*, 107 W. Va. 574, 149 S. E. 668: "One is not ordinarily considered sick who performs his usual occupation though some organ of the body may be affected;

he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. 'Sickness is condition interfering with usual vocations.' " Apart from "sickness", the other conditions upon which payment of benefits under Section 3 (A) is based are that the insured be "necessarily and continuously confined to the house and visited therein at least once every seven days by a legally qualified physician or surgeon other than the Insured."

The testimony bearing on these conditions is limited to that of Leftwich, his wife, and Dr. Peter. Leftwich and his wife testify, in substance, that he went to the company doctor, Dr. Moore, on the 16th day of February, 1940, and to the Beckley Hospital on the 17th, where he was told to remain at home for a week; that during the entire period for which benefits are claimed, he was either at home or actually confined in the hospital; and that when he was directed to remain at home, he did so except for visits to the hospital once or twice each week, however, he was not visited in his home by a physician. The trips to the hospital were made in a taxicab or in a car driven by a friend. Dr. Peter, called to testify by plaintiff in error, said that Leftwich was at the hospital for a few hours on the 24th and 28th of February, 1940, that he was confined therein from March 5th to March 21st and from April 9th to April 19th, and that he made "various visits" to the hospital during the intervals he was not a patient therein. Dr. Peter further testified that Leftwich had been primarily in his care since February 24, 1940, and that, in his opinion, Leftwich was totally disabled from that date until May 31st of the same year. A strict application of the rule of actual confinement to the house was urged in this Court and rejected in the case of *Wade* v. *Mutual Association,* 115 W. Va. 694, 177 S. E. 611, wherein a policy stipulation which required continuous confinement of the insured as a condition precedent to payment of indemnity for illness was held to relate to the "condition, extent and degree of illness", and did not "prescribe or limit the conduct of the insured." The

584

foregoing principle was approved by this Court in *Pearson* v. *Insurance Co.,* 116 W. Va. 147, 178 S. E. 814. The disabling sickness of the insured is the crucial thing, and the tendency of the courts has been to depart from a literal restraint within the walls of the house. Appleman, Ins. Law and Practice, Section 652. The word "necessarily," as used in the policy herein, with "continuously confined," does not make the principles just referred to inapplicable. See *Colorado Life Ins. Co.* v. *Steele,* (C. C. A. 8th) 101 F. 2d 448; *Interstate Business Men's Assn.* v. *Sanderson,* 144 Ark. 271, 222 S. W. 51; *Washington Nat. Ins. Co.* v. *Booker* (Tex.), 123 S. W. 2d 975. We think that Leftwich has shown at least substantial compliance with the provisions relating to the place and frequency of a physician's visitations and that literal compliance therewith is not required of the insured.

In *Colorado Life Ins. Co.* v. *Steele, supra,* and *National Life and Accident Ins. Co.* v. *Armstrong,* 21 Tenn. App. 92, 105 S. W. 2d 520, the fact that insured called at a doctor's office for treatment did not deprive him of benefits from a health and accident policy which, as in the case at bar, required continuous confinement in the house and regular visits therein by a physician. See also Appleman, Ins. Law and Practice, Section 655.

As to the provision for such visits of a physician "at least once every seven days," the record herein substantially shows that the requirement in regard to the frequency of treatment or visitation was satisfied, and even this provision will not be construed to require a literal compliance. *Mutual Benefit Health & Accident Assn.* v. *Bunting,* 133 Fla. 646, 183 S. 321; 7 Couch Cyc. of Ins. Law 5797, Section 1679.

In so construing the policy provisions embraced in Section 3 (A) thereof, we are mindful that this Court is committed to the doctrine that insurance policies should be construed "most liberally in favor of the insured." *Milam* v. *Norwich Union Indemnity Co., supra; Tucker* v. *Insurance Co.,* 58 W. Va. 30, 51 S. E. 86; *Cook* v. *Insurance Co.,* 105 W. Va. 375, 143 S. E. 113.

Upon the whole record, we perceive no prejudicial error and therefore the judgment of the trial court is affirmed.

*Affirmed.*

KENNA, PRESIDENT, concurring:

I am in full accord with the majority opinion with the exception of its treatment of the testimony showing the defendant's payment of ten dollars to Leftwich. The defendant objected to this testimony because waiver had not been specially pleaded by the plaintiff and therefore payment could not be shown as constituting an admission of liability and a waiver of known defenses. Instead of controverting the legal question thus raised, the plaintiff stated that the testimony concerning payment, including a post card mailed by the defendant to him referring to the payment of ten dollars, was offered, not for the purpose of showing waiver of defenses on the part of the company, but in order to credit the defendant with the amount paid as against the amount sought to be recovered. It was not objected to by the defendant as being inadmissible for that purpose, and the defendant made no effort, by instruction or otherwise, to limit the effect to be given it by the jury, as was its right if it cared to do so. The plaintiff having stated the purpose for which the testimony was tendered, and there being no specific objection covering its admissibility for that purpose, I am under the impression that the duty of seeing that the jury was properly informed as to the limitations upon its use and effect became and was a matter of defense, and for that reason did not rest upon either the plaintiff or the trial judge.

It is well established that where the objection to the admission of testimony is based upon some specified ground, the objection is then limited to that precise ground and error cannot be predicated upon the overruling of the objection, and the admission of the testimony on some other ground, since specifying a certain ground of objection is considered a waiver of other

grounds not specified. Jones on Evidence (2nd Ed.), page 4990. By analogy, a general objection could not serve to exclude testimony properly admitted upon any theory. *Curfman* v. *West Penn, etc., Co.,* 113 W. Va. 85, 166 S. E. 848, and *Parr* v. *Coca-Cola Bottling Works, etc.,* 121 W. Va. 314, 3 S. E. 2d 499. The objection to testimony is addressed to the court and, in theory, a ruling dealing with its admissibility, as distinguished from the testimony itself, does not reach the jury. Being of the opinion that it devolved upon the defendant to see that the effect to be given to the testimony by the jury was properly limited, in the absence of that effort I do not believe that it could be regarded as prejudicial error for either the trial judge or the attorney representing the plaintiff to fail to see that the jury limited the effect of the testimony. However, with all deference, I do not agree with the position taken by the majority of the court, as I understand it, to the effect that a mere discussion or colloquy between the trial judge and the attorneys representing the plaintiff and the defendant concerning the purpose for which evidence is admitted should be regarded as preventing the jury from being misled or as in any way affecting its conduct. I am under the impression that these statements contained in the majority opinion constitute a wide departure from well settled principles of jury deliberation and that if followed hereafter, the consequence will be quite confusing.