BLANCHE CHRISTOPHER, AS COMMITTEE FOR O. K. CHRISTOPHER

*v.*

THE UNITED STATES LIFE INSURANCE COMPANY IN THE CITY OF NEW YORK, *A Corporation*

(No. 12011)

Submitted September 27, 1960. Decided November 15, 1960.

*D. Grove Moler,* for plaintiff in error.

*W. V. McNemar, Jr.,* for defendant in error.

GIVEN, JUDGE:

Plaintiff, Blanche Christopher, as committee for O. K. Christopher, obtained a verdict and judgment against The United States Life Insurance Company in the City of New York, for $722.10, in the Circuit Court of Wyoming County. The action was prosecuted for recovery of disability benefits, alleged to have accrued to O. K. Christopher by virtue of provisions of an insurance policy issued to him August 7, 1956, for a term of two years, the disability being admitted and the amount of accrued benefits not being disputed.

The policy provided that the word "Sickness" used therein "means sickness or disease contracted and commencing after this policy has been in force not less than fifteen days after its effective date and resulting in loss covered by this policy". Monthly benefits were to be paid only as a result of "injury or sickness and commencing while this policy is in force * * *''. Certain exclusions, believed not to be pertinent to the controlling facts, were set out in the policy. Apparently the insured was asked no questions relating to his physical condition, and he made no representations concerning the same, the policy having been purchased along with the purchase of an automobile on an installment plan.

As to notice of claim, the policy provided: "Written notice of claim must be given to the Company within twenty days after the occurrence or commencement of any loss covered by the policy, or as soon thereafter as is reasonably possible * * *''. Due to the circumstances hereinafter detailed, notice by the committee was not given until about one hundred forty nine days subsequent to the commencement of the disability for which claim was made.

The insured, fifty one years of age, was hospitalized from April 13, 1955, to May 12, 1955, and was treated during that time for a condition diagnosed as schizophrenia, paranoid type. He was discharged from the hospital "as improved", and later returned to his usual work, which was regularly performed for about one

year. He again entered the hospital October 16, 1958, at which time he was administered "insulin and electric shock treatments on alternate days". His condition at this time was diagnosed as "chronic mental illness" or "chronic schizophrenic" reaction. He was again discharged from the hospital, November 26, 1958, as "having poor prognosis", with direction as to further medical treatment, and with remarks that "it is not felt that the patient is employable"; and that "the patient has functioned on a schizophrenic level apparently for a number of years".

The questions briefed relate to whether the condition or sickness proved falls within the provisions of the policy contract, and, if so, whether notice of the disability claimed was given to the defendant within a reasonable time after the commencement of the disability.

To sustain the judgment, plaintiff relies heavily on *Leftwich v. Inter-Ocean Casualty Co.*, 123 W. Va. 577, 17 S. E. 2d 209, and *Milam v. Norwich Union Indemnity Co.*, 107 W. Va. 574, 149 S. E. 668. In the *Leftwich* case, the insured signed no application for the insurance, and contended that he was in good health at the time of the issuance of the policy. The evidence, however, established that the insured, at the time of the commencement of the disability for which claim was made, was "suffering from chronic glaucoma in each eye", and, in the opinions of the physicians, had been afflicted with that condition before the issuance of the policy. There was no attempt to establish that the preexisting condition had materially interfered with the usual work of the insured prior to the issuance of the insurance policy. The pertinent provision of the policy was to the effect that benefits would be paid only where the "insured is 'by reason of sickness, necessarily and continuously confined to the house * * *'". The Court held: "2. The word 'sickness' as used in a policy of health insurance means a physical condition or ailment which incapacitates the insured

from the performance of the duties of his usual vocation.''

In the *Milam* case the insured ''had been under medical treatment for Bright's Disease for a year or so before'' the issuance of the policy. The policy was acquired as an incident to the purchase of an automobile on an installment plan, and the insured was asked no questions relative to his health. The preexisting disease had not interfered with the employment of the insured prior to the issuance of the policy. The policy provided for the payment of disability benefits in the event of ''sickness contracted during the term of the policy.'' The Court, holding that a liberal construction of the policy in favor of the insured was indicated, stated: ''* * * An ailment alone, no matter when originating, was not the paramount thought in the insurance contract, *but an ailment which disabled.* The policy specifies *sickness contracted,* not disease, malady, or ailment contracted. While the word 'sickness' is technically synonymous with such words as 'disease,' it is popularly differentiated in this way: one is not ordinarily considered sick who performs his usual occupation, though some organ of the body may be affected; he is regarded as sick, when that diseased condition has advanced far enough to incapacitate him. 'Sickness is condition interfering with usual vocations.' *Northwestern Ins. Co. v. Wiggin,* 15 Fed. (2d) 646; *Doody v. Davis,* (Cal.) 246 Pac. 339. Terms used in a health policy should be considered from the standpoint of popular acceptation and not in the light of scientific technical definition. *Northwestern Ins. Co. v. Wiggin, supra.* A liberal construction of the term 'sickness contracted.' as used in this policy, requires that it be applied to the time when the malady was sufficiently active to disable the patient and not to the time when it originated * * *''.

We are of the opinion, however, that the pertinent language in the policy involved in the instant case, '' 'Sickness' wherever used in this policy means sickness or disease contracted and commencing after this

policy has been in force not less than fifteen days'', differentiates it from the language pertinent to the decisions in the two cases cited, and cases of like purport. Here the language is made definite as to the meaning intended by the word ''sickness'', and the words ''contracted and commencing'' have definite relation to the time when the policy became effective. The meaning being definite, there is no room for liberal or other construction. See *Magnus v. Halltown Paper Board Co.,* 143 W. Va. 122, 100 S. E. 2d 201; *Mitchell v. Metropolitan Life Insurance Co.,* 124 W. Va. 20, 18 S. E. 2d 803; 17 C.J.S., Contracts, Section 504.

Though the cited cases discuss the relative meaning of the words ''sickness'' and ''disease'', we think any differences or similarities are not important in the instant case, since the language used by the parties in the contract made definite and certain the meaning intended, which must govern whether one meaning or the other, if the words were standing alone, is accorded to the words. Moreover, the condition which resulted in the disability, ''sickness or disease'', is required to ''commence'' subsequent to the issuance of the policy. In the instant case it is clearly shown, we believe, that the ''sickness or disease'' causing the disability of the insured antedated the insurance policy.

Moreover, it is pertinent to point out that the very same condition which resulted in the disability for which claim was made, on which the verdict and judgment complained of were based, caused a like disabling condition of the insured prior to the issuance of the policy, and for which the insured was previously hospitalized. In the instant case the underlying cause of the condition resulting in the disability not only antedated the policy, but the disease or condition had actually and definitely manifested itself to the extent that it had disabled the insured prior to the issuance of the policy, though medical assistance had temporarily resulted in amelioration of the condition. See Annotation, 53 A.L.R. 2d 686; 29A Am. Jur., Insurance, Section 1156.

We are aware of the line of decisions following what appears to be a minority rule to the effect that, even in circumstances of facts like those governing the *Leftwich* and *Milam* cases, recovery by an insured is denied on the theory that strict construction of such policy contracts is required. See Annotation, 53 A.L.R. 2d 686. The strict construction theory was expressly rejected in the *Milam* case,. however, and we adhere to the theory of liberal construction in favor of the insured, where the language used in the policy contract permits a construction thereof, but ''In the absence of ambiguity in an insurance contract, ordinarily neither party thereto can be favored in its construction.'' 44 C.J.S., Insurance, Section 297b.

The judgment of the Circuit Court of Wyoming County is reversed, the verdict of the jury set aside, and a new trial awarded.

*Reversed; verdict set aside;*
*new trial awarded.*