540 S.E.2d 144

Lester Kent FINLEY, Plaintiff
Below, Appellant,

v.

NORFOLK AND WESTERN RAILWAY
COMPANY, a Foreign Corporation,
Defendant Below, Appellee.

No. 25816.

Supreme Court of Appeals of
West Virginia.

Submitted May 5, 1999.

Decided July 15, 1999.

Concurring Opinion of Justice
Workman July 16, 1999.

John E. Basilone, Esquire Moody, Strople & Kloeppel, Inc. Portsmouth, West Virginia and Catherine D. Munster, Esquire McNeer, Highland, McMunn & Varner, L.C. Clarksburg, West Virginia Attorneys for the Appellant.

James W. Turner, Esquire J.H. Mahaney, Esquire Huddleston, Bolen, Beatty, Porter & Copen Huntington, West Virginia Attorneys for the Appellee.

PER CURIAM:

The appellant in this proceeding, Lester Kent Finley, who injured his back in the course of his employment with Norfolk and Western Railway Company, brought this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq.* The case was tried before a jury, and on May 2, 1997, the jury found that Norfolk and Western Railway Company was not negligent and returned a verdict in favor of the company.

On appeal, the appellant claims that the verdict was contrary to the weight of the evidence and that the circuit court should have granted him a new trial. He also claims that the court made numerous evidentiary rulings and that the cumulative error justifies reversal of the judgment.

I.

FACTS

On October 6, 1994, the appellant, who was working as a brakeman for Norfolk and Western Railway Company, injured his back as he was attempting to throw a railroad switch. There was evidence that this switch had been hard to "throw" and that the problem had been reported to Norfolk and Western supervisors prior to October 6, 1994.

After being injured, the appellant was transported to Williamson Memorial Hospital where he was diagnosed as having a spasm in the paraspinal muscles of the back. There is some evidence suggesting that the spasm was so severe that it eradicated the normal curvature of his spine and that it caused his left hip to be greatly elevated compared to the right.

The appellant brought the present action under the Federal Employers Liability Act, and as has been previously indicated, the jury, at the conclusion of the trial, returned a verdict for Norfolk and Western Railway Company. After the jury returned its verdict, the appellant moved for a new trial, and following a hearing in the matter, the trial court on December 5, 1997, denied the appellant's motion. It is from that ruling that the appellant now appeals.

## II.

### STANDARD OF REVIEW

This Court has indicated that it reviews a circuit court's rulings and a motion for a new trial under an abuse of discretion standard. *See In Re: State Public Building Asbestos Litigation,* 193 W.Va. 119, 454 S.E.2d 413 (1994). Further, we have recognized that the circuit court's underlying factual findings should be reviewed under a clearly erroneous standard, and questions of law should be subjected to *de novo* review.

### A.

### *The Question of Whether the Verdict*
### *was Contrary to the Evidence*

■ As has been previously indicated, one of the appellant's claims is that the verdict rendered by the jury was contrary to the weight of the evidence.

■ In addressing questions of this sort, this Court has rather consistently recognized:

In determining whether there is sufficient evidence to support a jury verdict the court should: (1) consider the evidence most favorable to the prevailing party; (2) assume that all conflicts in the evidence were resolved by the jury in favor of the prevailing party; (3) assume as proved all facts which the prevailing party's evidence tends to prove; and (4) give to the prevailing party the benefit of all favorable inferences which reasonably may be drawn from the facts proved.

Syllabus Point 5, *Orr v. Crowder,* 173 W.Va. 335, 315 S.E.2d 593 (1983). *See also Pote v. Jarrell,* 186 W.Va. 369, 412 S.E.2d 770 (1991) and *Pinnacle Mining v. Duncan Aircraft Sales,* 182 W.Va. 307, 387 S.E.2d 542 (1989).

This Court believes that when the evidence is examined in line with these principles, it was sufficient to support the jury's verdict. During trial, the appellant claimed that his injury occurred while he was trying to "throw" a Norfolk and Western switch which was defective, and which Norfolk and Western Railway Company knew was defective. He testified that, immediately before his injury, he grasped the switch lever or handle with both hands as he had been trained to do, that the handle was stiff, or difficult to move, and that he had to yank it. As he yanked it, the handle moved three or four inches and then suddenly stopped, and the appellant felt a jolt of pain in his low back and legs. He collapsed on the road bed next to the switch; his coworkers came to his aid and summoned help; and his supervisor transported him to a hospital where he received medical attention.

To show specifically that the switch was defective, the appellant called as an expert witness Harold E. Wall, Jr., a former railroad trackman who was also a federal railway track safety inspector. Mr. Wall testified that the switch on which the appellant was injured was difficult to throw because a "keeper" was improperly aligned with the switch handle. He also testified that the placement of shims in the switch mechanism indicated that there was a problem or defect with a switch gear. He concluded that the switch was defective, that its condition violated custom and practice in the railroad industry, and that the switch was unsafe. He indicated that a reasonable inspection of the switch would have revealed its defects and that when a railroad observes such a switch on its property, custom and practice demands that it replace or repair the switch.

To show that the Norfolk and Western Railway Company had knowledge of the problems with the switch, the appellant adduced the testimony of Michael Keith Rutherford, a Norfolk and Western employee who had thrown the switch, which allegedly caused the appellant's injury, 25 to 30 times prior to the appellant's injury. Mr. Ruther-

ford testified that the switch was hard to throw, that the switch handle rubbed against the switch cradle, and that he had reported the switch as defective to the train dispatcher at Kenova, West Virginia, sometime in 1994 prior to the appellant's injury. He further testified that the switch had been difficult to throw ever since it had been placed in service, and to his knowledge, it had never been repaired. Another employee, John Edward Smith, also stated that the switch was hard to throw and needed attention. He testified that he reported the switch as defective on several occasions over the radio to Norfolk and Western's dispatcher and that he also reported it as defective to Jack Stepp, the Norfolk and Western track supervisor who had installed the switch and who was responsible for its maintenance. Mr. Smith testified that in spite of his repeated reports, the condition of the switch never changed before the appellant's injury.

In addition to introducing evidence relating to the events surrounding his injury and the condition of the switch, the appellant introduced medical evidence indicating that he had sustained serious disability as a result of his back injury.

To counter the appellant's evidence, the Norfolk and Western Railway Company presented the testimony of Denver Copley, the engineer on the appellant's train at the time of the appellant's injury. Mr. Copley testified that he actually witnessed the incident in which the appellant was injured and that the appellant at the time of the incident was attempting to throw the switch with one hand, a procedure which was unsafe and which constituted a violation of Norfolk and Western's safety rules.

Norfolk and Western also called J.D. Farley, its road foreman of engines, who testified that approximately one hour after the appellant's injury, he inspected the switch along with assistant track supervisor Jack Stepp. Mr. Farley stated that he threw the switch several times and, although he noticed that the handle rubbed very slightly against the keeper mechanism, the switch was not unduly hard to throw or unsafe in any way. Another witness for Norfolk and Western Railway Company, Larry Reed, Norfolk and

Western's assistant superintendent from Williamson, indicated that the appellant had been given training as to how a switch should be thrown and that that training required the use of both hands. Mr. Reed, who was a Safety Committee member, further testified that at Norfolk and Western Safety Committee meetings, safety issues were raised, but so far as he knew, based upon his memory and his review of extensive Safety Committee minutes, the switch which the appellant was attempting to throw was never reported to the committee as being in need of repair, or as being hard to throw, in the ten-month period prior to the appellant's injury.

Jack Stepp, Norfolk and Western's assistant track supervisor, the individual responsible for inspecting and maintaining the switch on which the appellant was injured, testified that his job included inspecting the switch on which the appellant was injured at least once a week. He stated that the Norfolk and Western Railway Company had never been cited or fined by the Federal Railroad Administration for problems with the switch and that on at least one occasion prior to October 6, 1994, he had been accompanied by a Federal Railroad Administration inspector who had inspected and thrown the switch in question. Mr. Stepp expressed the opinion that the switch was in full compliance with Norfolk and Western's rules and standards.

To rebut the appellant's evidence relating to the severity of his injury and disability, Norfolk and Western Railway Company further introduced testimony from an orthopedic surgeon, Dr. David Santrock, who indicated that the appellant's injury had not resulted in serious permanent disability. Norfolk and Western Railway Company also adduced testimony from its manager of Disability Support Services, Richard Hyath, which suggested that a position could be found for the appellant, even in his injured condition, with the Norfolk and Western Railway Company.

Although the evidence adduced by the appellant would suggest that the switch on which he was injured was defective, and that Norfolk and Western Railway Company knew of the defect, the appellant's evidence was rebutted by the testimony of the wit-

nesses for Norfolk and Western Railway Company. Likewise, the appellant's testimony as to the severity of his injury and disability was rebutted.

Overall, this Court believes that when the conflicts in the evidence, and its inferences, are resolved in line with the principles set forth in Syllabus Point 5 of *Orr v. Crowder, supra,* the evidence was sufficient to support the jury's verdict.

## B.

### *The Trial and Evidence in the Case*

### *and the Cumulative Error Claim*

In addition to claiming that the jury's verdict was not supported by the evidence, the appellant claims that the trial court committed a number of evidentiary and procedural errors during the trial of this case. For instance, he claims that the trial court committed reversible error when it limited the examination of one of his witnesses, Barry Stamper. Mr. Stamper was employed as a locomotive engineer at the time of the installation of the switch which the appellant was attempting to throw at the time he was injured. The appellant, in his brief in this case, contends that Mr. Stamper was prepared to testify that as an engineer, his duties included reporting defective track equipment via his locomotive radio, and that through his use of the radio, the fact that the switch on which the appellant was injured was defective was widespread among Norfolk and Western Railway Company employees in the area. When the appellant specifically attempted to question Mr. Stamper regarding his knowledge of complaints which he had relayed relating to the switch, counsel for Norfolk and Western Railway Company objected, and the court refused to allow Mr. Stamper to testify. Counsel, however, failed to explain to the court that the testimony was not offered to prove the matter asserted, but instead, to prove that Norfolk and Western Railway Company had notice of the switch problems. Following the court's ruling, the appellant's attorney did not pursue the issue and did not vouch, or otherwise place in the record, the excluded testimony of witness Stamper. On appeal, the appellant claims

that the court's ruling prejudiced the outcome of this case.

■ In Syllabus Point 8 of *Torrence v. Kusminsky,* 185 W.Va. 734, 408 S.E.2d 684 (1991), we said:

"If a party offers evidence to which an objection is sustained, that party, in order to preserve the rejection of the evidence as error on appeal, must place the rejected evidence on the record or disclose what the evidence would have shown, and the failure to do so prevents an appellate court from reviewing the matter on appeal." Syllabus Point 1, *Horton v. Horton,* 164 W.Va. 358, 264 S.E.2d 160 (1980).

■ This Court believes that in line with this rule, the failure of the appellant to place on the record what Mr. Stamper would have testified to, in effect, precludes us from now reviewing his claim that the exclusion of Mr. Stamper's testimony prejudiced the outcome of the case.

Another claim made by the appellant is that the circuit court improperly admitted evidence relating to prior company discipline imposed upon him. This claim grows out of the fact that sometime prior to the appellant's injury, the Norfolk and Western Railway Company disciplined him for having been involved in the derailment of certain rail cars. When counsel for Norfolk and Western Railway Company introduced evidence relating to this, the appellant's attorney interjected only a general objection, without stating a specific ground for the objection.

Rule 103 of the *West Virginia Rules of Evidence* normally requires that a specific objection be made to the admission of evidence for that evidence to serve as a predicate for error. The relevant language of Rule 103 of the *West Virginia Rules of Evidence* provides:

(a) *Effect of erroneous ruling.*-Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.*-In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating

the specific ground of objection, if the specific ground was not apparent from the context. . . .

■ In the present case, the Court believes that the failure of the appellant's attorney to interpose a specific ground for objection precludes the appellant from using the admission of the evidence of prior discipline as a predicate for error.

■ Another claim made by the appellant is that the trial court committed reversible error by precluding his attorney from cross-examining Jack Stepp, the assistant track supervisor for Norfolk and Western Railway Company, on the effect of downsizing in Norfolk and Western's Track Department. Mr. Stepp was allowed to testify that over the course of several years, the number of workers provided to him by Norfolk and Western to perform his assigned work had decreased. When the appellant attempted to cross-examine Mr. Stepp further as to the number of workers assigned to him and the amount of work which they were required to perform, both before and after the downsizing, apparently to create the impression that the inspection staff was undermanned, counsel for Norfolk and Western Railway Company objected on the ground that such questioning was irrelevant and carried a potential prejudicial effect. The trial court sustained the objection. As was the situation with witness Stamper, counsel for the appellant again failed to vouch the record with what Mr. Stepp's testimony would have been. Under such circumstances, this Court again believes that the rule set forth in Syllabus Point 8 of *Torrence v. Kusminsky, supra*, dictates the failure to vouch the record precludes the trial court's ruling as serving as the predicate for reversing the verdict in this case.

Another assignment of error made by the appellant is that the circuit court committed reversible error in limiting his cross-examination of two witnesses for Norfolk and Western Railway Company, Richard Hyath and Dr. David Santrock. Richard Hyath, who was Manager of Disability Support Services for Norfolk and Western Railway Company, testified that Norfolk and Western had offered the appellant an opportunity to participate in its vocational rehabilitation program, but that the appellant had refused. Mr. Hyath indicated that through this program, there were positions within the Norfolk and Western Railway Company for injured employees such as the appellant. It is rather obvious that Norfolk and Western Railway Company called Mr. Hyath to suggest that the appellant was not as vocationally impaired as a consequence of his injury as the appellant's own testimony had suggested. Mr. Hyath's testimony in no way related to the defectiveness of the switch on which the appellant was injured, or the knowledge of the Norfolk and Western Railway Company relating to that switch. It focused instead on the effect of any injury which the appellant had sustained on the appellant's ability to work.

Similarly, the testimony of Dr. David Santrock involved the severity of the appellant's injuries rather than any possible negligence of the Norfolk and Western Railway Company in maintaining the switch in question, or Norfolk and Western's knowledge of any defect in the switch.

The appellant sought to cross-examine Mr. Hyath about the number of disabled persons who had actually been placed in employment positions by him. Counsel for Norfolk and Western objected, and that objection was sustained. Likewise, the appellant sought to cross-examine Dr. David Santrock about injured Norfolk and Western employees he had previously examined and what his findings were relating to those employees. Again, counsel for Norfolk and Western objected, and again Norfolk and Western's objection was sustained.

As was the case with witnesses Stamper and Stepp, defense counsel again failed to vouch the record as to what witnesses Hyath and Santrock would have stated had he been allowed to proceed with his cross-examination. For this reason alone, given the ruling in *Torrence v. Kusminsky, supra*, this Court believes that the trial court's ruling cannot serve as a basis for the reversal of the jury's verdict.

Additionally, the Court notes that the jury in this case specifically found that Norfolk and Western Railway Company was not neg-

ligent. Since the testimony of witnesses Hyath and Santrock did not go to the negligence of Norfolk and Western Railway Company, but rather to the damages sustained by the appellant, we cannot see how the additional testimony would have altered the jury's conclusion on the negligent point or the outcome of the case.

Another claim made by the appellant is that the trial court allowed counsel for Norfolk and Western Railway Company to engage in closing argument which was calculated to inflame and mislead the jury.

■ An examination of the record of the argument shows that defense counsel at no point during the closing argument interposed any objection whatsoever to what counsel for Norfolk and Western Railway Company was saying. Under our law, the making of an objection is normally a precondition to challenging remarks made during argument on appeal. In line with this, this Court has repeatedly recognized that:

> Failure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a waiver of the right to raise the question thereafter either in the trial court or in the appellate court.

Syllabus Point 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945); *see also Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995). In addition, we have said:

> This court will not consider errors predicated upon the abuse of counsel of the privilege of argument, unless it appears that the complaining party asked for and was refused an instruction to the jury to disregard the improper remarks, and duly excepted to such refusal.

Syllabus Point 6, *McCullough v. Clark*, 88 W.Va. 22, 106 S.E. 61 (1921).

The appellant also claims that the introduction of his school and military records into evidence by the trial court constituted reversible error.

In the course of the trial, evidence was introduced indicating that when the appellant applied for a position with Norfolk and Western Railway Company, he completed an application for employment. That application for employment was admitted without objection as Defendant's Exhibit No. 5. It showed that the appellant had represented to Norfolk and Western Railway Company that he had graduated first in his class from Crum High School and that he had attended Marshall University and achieved a grade point average of 3.5. Further, on his application for employment, the appellant represented to Norfolk and Western Railway Company that he had never sustained any type of back injury or back pain.

To show that the appellant had made misrepresentations on his employment application, and to impeach the appellant's credibility, counsel for Norfolk and Western Railway Company questioned the appellant in some detail about his educational records and his medical records and the discrepancies between them and what he had said on his employment application. After the appellant admitted that there were discrepancies, counsel for Norfolk and Western Railway Company moved to introduce the actual records. The appellant's attorney objected to the admission of the actual records on two grounds, that to admit them after the appellant had testified would place undue influence on the contents of the records and that the documents were hearsay. The trial court overruled the objections.

On appeal, the appellant no longer contends that the admission of the documents would place undue weight on their contents or that they were hearsay. Instead, he claims that they were not properly authenticated and that the documents constituted improper evidence of prior bad acts.

As has been previously stated, Rule 103 of the *West Virginia Rules of Evidence* requires that a party objecting to the admission of evidence assign a specific ground for the objection. It has been generally recognized that: "Where a wrong reason is assigned for an objection it is the same as if there was no objection at all. . . ." Further: "Only those objections or grounds of objection which were urged on the trial court, without change and without addition, will be considered on appeal." 4 C.J.S. *Appeal and Error* § 216.

In line with this, in the concurring opinion in *Leftwich v. Inter-Ocean Casualty Company*, 123 W.Va. 577, 585–6, 17 S.E.2d 209, 213 (1941), Justice Kenna stated:

It is well established that where the objection to the admission of testimony is based upon some specified ground, the objection is then limited to that precise ground and error cannot be predicated upon the overruling of the objection, and the admission of the testimony on some other ground, since specifying a certain ground of objection is considered a waiver of other grounds not specified.

█ In the present case, since the appellant did not assign in the trial court the same reasons for his objections to the admission of the educational and medical records which he asserts on appeal, we believe that it would be inappropriate to reverse the jury verdict on the basis of the new points which he asserts for the first time on appeal.

Although the appellant did not receive the verdict to which he believes he is entitled, as has previously been discussed, the jury's verdict is consistent with, and supported by the evidence in the case. A fair reading of the evidence adduced by Norfolk and Western Railway Company suggests that the company was not negligent in installing or maintaining the switch on which the appellant was injured; and the jury so found. The appellant was able to introduce into evidence testimony and opinion which contradicted the testimony and opinion of the Norfolk and Western witnesses. Many of the evidentiary and procedural assignments which the appellant now claims cumulatively resulted in an unfair trial affected evidence and argument which might have buttressed his position, but which would not have fundamentally altered the basic contradictory evidence in this case. Further, it is apparent that the inability of the appellant to introduce certain evidence, or to prevent the introduction of certain other evidence by Norfolk and Western Railway Company, was attributable to the failure of the appellant's attorney to interpose proper objections and to call to the trial court's attention to reasons for admitting or rejecting evidence. In light of all this, we cannot conclude that there was cumulative error in this case which denied the appellant a fair trial.

For the reasons stated, the judgment of the Circuit Court of Wayne County is affirmed.

Affirmed.

Chief Justice STARCHER and Justice McGRAW dissent.

Justice MAYNARD concurs.

WORKMAN, Justice, concurring:

(Filed July 16, 1999)

The result of this case is not very satisfying, for this was not the perfect trial. However, most of the error that occurred was unobjected to by the Appellant's counsel and not properly preserved for appellate review. *See Cochran v. Appalachian Power Co.*, 162 W.Va. 86, 93, 246 S.E.2d 624, 628 (1978) ("The almost universal rule is that an appellate court need not consider grounds of [an] objection not presented to the trial court.").

Even though, perhaps cumulatively, the error which occurred would have been enough to reverse, because few objections were raised, the unobjected to errors are not properly the subject of the cumulative error doctrine. This Court has recognized that the cumulative error doctrine should be applied sparingly and only where the errors are apparent from the record. *See Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374, 395 (1995) ("Although we recognize that the cumulative error doctrine may be used by a circuit court in situations where there are numerous 'harmless' errors, as we have frequently noted, the doctrine should be used sparingly. Furthermore, 'if the errors ... are insignificant and inconsequential, the case should not be reversed under this rule.' I Franklin D. Cleckley, Handbook on Evidence § 1–7(B)(5) at 49. Additionally, the doctrine can only be applied if there are some errors in the record. *See State v. Carrico*, 189 W.Va. 40, 427 S.E.2d 474 (1993) (cumulative error doctrine is inapplicable where no errors are present)"). Because so many of the errors now claimed to constitute cumulative error were unobjected to below, this Court simply cannot now con-

clude that the case should be reversed based upon cumulative error.

Finally, even though this decision was affirmed, that affirmation does not extend to the conduct of the attorneys, particularly the defense attorneys, involved in the trial. As the circuit court stated during a hearing on the Appellant's motion for a new trial:

I will state also that this is probably the worst case of personal attacks that I've seen in a case as well. Although on a relevancy matter and on the attack of credibility, I admitted a lot of things. I think I'm going to be more cautious in the future. And I want Mr. Mahaney [one of the attorneys for Norfolk and Western Railway Company] to know that, I'm not going to let another case get to that point where it is an attack on the individual plaintiff and the attorney.

It turned out to be more so. But it was too far in the stages of the trial at that point when I first realized that it had gone that way. . . .

. . . .

But I will tell you this, I was upset with some of the things that went on. And I don't think that's what trials should be. I don't think they should be personal attacks. We are looking a the evidence. You can attack the credibility of witnesses I think without getting personal with them. And especially not getting personal attacks on the attorneys that are involved in the case.

Like the trial judge, I strongly disapprove of these types of personal attacks taking place in the courtroom. Such conduct is totally inappropriate. As stated in the preamble to the Standards of Professional Conduct,

Lawyers' conduct should be characterized at all times by personal courtesy and professional integrity. In fulfilling their duty as lawyers to represent a client vigorously, they should be mindful of their obligations to the administration of justice. Lawyers owe to opposing counsel, the parties, the courts and the court's staff a duty

of courtesy, candor, honesty, diligence, fairness and cooperation.

. . . .

Conduct characterized as uncivil, abrasive, abusive, hostile, or obstructive impedes the fundamental goal of resolving disputes rationally, peacefully and efficiently, and tends to delay and often deny justice.

Although there exists no sanctions for a violation of the Standards for Professional Conduct,* lawyers should regulate themselves diligently by observing these Standards of Professional Conduct at all times.

---

* While there are no sanctions for violating the Standards of Professional Conduct, the same does not apply where an attorney violates the Rules of Professional Conduct. Any violation of the Rules of Professional Conduct is dealt with through the Rules of Lawyer Disciplinary Procedure.